Mary Helen **BURTON**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16093.

United States Court of Appeals
Ninth Circuit.

Nov. 16, 1959.

Rehearing Denied Jan. 7, 1960.

**474**

Harry E. Weiss, Ernest L. Graves, Arthur Sherman, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Rembert T. Brown, Robert John Jensen, Bruce A. Bevan, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before ORR, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a conviction of the receipt, concealment and transportation of eighty-eight grains of illegally imported heroin. 21 U.S.C.A. § 174. Appeal is timely and this Court has jurisdiction under 28 U.S.C. § 1291.

We first adopt, with slight changes, the introductory statement of appellant's opening brief which is as follows:

"Defendants Edwin Stewart and Mary Helen Burton were originally indicted in May of 1957, under Case No. 25917, of one count of violation of Title 21, § 174 of the United States Code, the illegal concealment and transportation of narcotics. Subsequently a motion to suppress was duly filed, and oral proceedings had before the Hon. Leon Yankwich * * * which motion was denied and the case transferred to the courtroom of the Hon. Harry Westover where the motion to suppress was again urged and additional evidence presented.[1]

"Thereafter, in October of the same year, each of the defendants were reindicted under Case No. 26268 of two counts of narcotics violation, and the original indictment under Case No. 25917 was dismissed. After the filing of the new indictment over objection of defendants, an additional motion to suppress was urged and denied. Subsequently at the time of trial, the evidence which was the subject of the various motions to suppress was admitted over objection of defendants. This case * * * was tried without a jury [before the Hon. Harry Westover], the court finding the defendant Edwin Stewart not guilty of all counts, and the defendant Mary Helen Burton guilty of Count I and not guilty of Count II.

"The government at the time set for the sentencing of the defendant in January of 1958, served upon the defendant, Mary Helen Burton, in open court, an unverified information alleging a prior offense. After various motions and objections on the part of defendant, said defendant was sentenced to ten years in the federal penitentiary, hence this appeal. The fundamental questions presented by this appeal are as follows:

"1. Whether there was an illegal search and seizure of the narcotics presented as evidence in the case

---

1. This second motion to suppress was denied, as was the third (or perhaps continued) motion hereinafter mentioned.

against appellant, Mary Helen Burton.

"2. Whether federal agents were connected with and a party to the illegal search and seizure.

"3. Whether appellant's constitutional rights under the Fourth, Fifth, Sixth and Eighth Amendments of the United States Constitution were infringed upon by the failure to allege the prior offense in the original indictment.

"4. Whether the court had the discretion to deny the prior conviction and sentence the defendant to five years imprisonment instead of ten years imprisonment as the court indicated it desired to do."

We next adopt the statement of facts made by appellee:

"On May 2, 1957, two deputy sheriffs employed by the County of Los Angeles and assigned to the Narcotic Detail, conducted an investigation of the appellant. At about 10:05 P.M., the officers observed the appellant and one Edwin Stewart, co-defendant of the appellant, arrive in an automobile and park in the driveway of 733 East 55th Street. The officers observed the defendants enter a garage apartment located on the rear lot and return to the vicinity of their car in approximately twenty minutes. When the defendants walked down the driveway towards the automobile in which they had arrived, the officers asked them to stop, at which time Stewart made several lunges toward the far corner of the driveway. Immediately after yelling 'Police Officers. Stop.' the officers observed the appellant and noticed that she had her hand underneath her coat and that a small object fell from the coat to the ground.

"The defendant Stewart was seized and appellant was ordered to place her hands on the hood of the automobile. Thereafter one of the officers retrieved a small manila envelope from the ground, Exhibit 1–

A, which later was identified to contain eighty-eight grains of heroin.

"The defendants thereafter were booked in the Los Angeles County jail for violations of both the Federal Narcotics Law and the narcotics laws of the State of California.

"Appellant denied owning, leasing or renting the premises at 733 East 55th Street and also denied that the object recovered from the ground was hers."

We prefer to define the issues here involved to be as follows:

1. Was there an illegal search and seizure of narcotics by the officers?

2. Assuming there was an illegal search and seizure, were the federal narcotics agents connected with and party to such illegal search and seizure?

3. Assuming there was an illegal search and seizure, does appellant have such a possessory interest in the substance seized so as to entitle her to move to suppress?

4. Was it error for the government to fail to plead the prior offense in the original information?

5. Was it error for the trial court to impose a sentence of ten years, believing it had no discretion to give a lesser sentence?

### Points 1, 2 and 3.

It is obvious that we need answer questions two and three only if question one is answered in the affirmative. If there was no illegal search and seizure, points one, two and three are disposed of.

Appellant's brief states the fact of illegality as a fact, and that there seems "little doubt" of the illegal search and seizure. But the narcotics introduced in evidence (eighty-eight grains of heroin) were picked up from the ground where appellant Burton was seen to drop them. Appellant Burton and co-defendant Stewart were thereafter searched, but no narcotics nor any other evidence was found on them. The only narcotics of which

defendant Burton was charged and found to be guilty of receiving, concealing and transporting were the eighty-eight grains of heroin found in the brown envelope seen to fall from beneath the coat of defendant Burton. At that time the defendant Burton had her hand beneath her coat. If we assume the only search subsequent to the arrest was illegal, it did not and could not prejudice defendant Burton. It produced no evidence against her; it bore no fruits.

We note that there is no error specified relating to a lack of probable cause for appellant's arrest. While the question of lack of probable cause for arrest is casually mentioned by both appellant [2] and appellee,[3] the case below was apparently tried on the assumption that probable cause for the arrest existed.

Appellant relies strongly on Williams v. United States, 1956, 99 U.S.App.D.C. 161, 237 F.2d 789. There it seemed clear that the person illegally arrested was, sometime later, about to be searched. "The arrest of appellant was illegal because without a warrant, without probable cause, and without other validating circumstances. The government does not seriously contend otherwise." 237 F.2d 789.

■ The Williams case, of course, is not controlling on this Court. But even to make it persuasive, we would be required to find (a) an illegal arrest; (b) an illegal search, or the threat thereof; (c) evidence introduced against appellant as a result or product of (a) and (b). All three essential elements are missing on the record before us.

Here there was admittedly no warrant for arrest. But lack of "probable cause" or "reasonable grounds" for the arrest

was not developed by appellant, if it existed at all. The government argues that lack of probable cause for arrest or search is unimportant and immaterial because appellant is in no position to claim an interest in the evidence abandoned by her, and we agree.

Appellant asks us to follow Williams, supra, and hold that despite a disclaimer of ownership in the heroin, and a denial that she had ever possessed it, she somehow obtained a standing to raise an objection, based on her interest therein, because other witnesses testified she dropped the heroin. We decline to follow the Williams case in this regard. We approve the view of Judge Learned Hand expressed in Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629 at page 630:

> "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma."

And see, Baskerville v. United States, 10 Cir., 1955, 227 F.2d 454; Gaskins v. United States, 1955, 95 U.S.App.D.C. 34, 218 F.2d 47; Scoggins v. United States, 1952, 92 U.S.App.D.C. 29, 202 F.2d 211; Kwong How v. United States, 9 Cir., 1934, 71 F.2d 71.

■ With respect to the eighty-eight grains of heroin marked Exhibit 1–A, we find no evidence of illegal search and seizure, and in fact we find no evidence

2. Appellant states: "Without attempting to repeat the evidence as outlined in the Statement of Facts, suffice it to conclude that the officers did not have reasonable or probable cause to effect the arrest of defendant and subsequent search and seizure of the narcotic substance." (Appellant's Brief, p. 20.)

3. "The law, in its wisdom, precludes the use of evidence obtained by arrests made

without what the law describes as probable cause.

"However, the law grants the privilege of suppressing such evidence only to those bold enough to acknowledge their interest therein. In addition, the law renders admissible in any event evidence discarded and abandoned by defendants." (Appellee's Brief, p. 13.)

of any search with respect to Exhibit 1–A; and no seizure of it, within the legal meaning of that term.[4] The heroin (Ex. 1–A) was abandoned property. Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Haerr v. United States, 5 Cir., 1957, 240 F.2d 533; Lee v. United States, 1954, 95 U.S. App.D.C. 156, 221 F.2d 29.

There being in fact and law no search and in law no seizure of the evidence by which appellant was convicted, there could be no illegal search or seizure involved.

Thus we find the first three issues raised by appellant, as they are redefined above, to lack merit.

### Point 4.

Was it error for the government to fail to plead the prior offenses in the original information?

The statute cited by appellant (68A Stat. 860 (1954), 26 U.S.C. § 7237 (1958) ) provides in part:

"After conviction (but before pronouncement of sentence) of any offense * * * [particularly described] * * *, the court shall be advised by the United States attorney whether the conviction is the offender's first or a subsequent offense. If it is not a first offense, the United States attorney shall file an information setting forth the prior convictions. The offender shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted. If the offender is found by the jury to be the person

previously convicted, or if he acknowledges that he is such person, he shall be sentenced as prescribed * * *."

Appellant urges that punishment for a second offense is authorized only if there has been an acknowledgment of the fact by the defendant or a determination by a jury; that the determination of the fact by a judge will not suffice; that the determination of the fact by the jury requires "dead time" to be served; that such dead time may not be considered by the court in sentencing, and hence (a) defendant has been placed twice in jeopardy, (b) there has been a violation of due process, and (c) defendant has suffered cruel and unusual punishment; and hence that the statute is unconstitutional.

 We have heretofore decided that the portion of the Boggs Act herein attacked is constitutional. Sherman v. United States, 9 Cir., 1957, 241 F.2d 329, at page 335. The facts sought to be established by the procedure "after conviction" go solely to the question of punishment. Graham v. State of West Virginia, 1912, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917; Beland v. United States, 5 Cir., 1942, 128 F.2d 795. The "dead time" is no greater than or different from "dead time" lost during the delay occasioned by the obtaining of a probation report on any convicted prisoner. There was no second trial of appellant. We find no merit in this point.

### Point 5.

Was it error for the trial court to impose a sentence of ten years believing it had no discretion to give a lesser sentence?

 Section 174 of 21 U.S.C.A. of which appellant was convicted requires a minimum sentence of ten years.[5] Un-

---

4. This statement, of course, does not apply to the heroin and paraphernalia used in connection with heroin addiction found in the premises thereafter searched by the officers, but not introduced in evidence against the appellant on the count under which she was convicted.

5. "For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years * * *." 35 Stat. 614 (1909), as amended 21 U.S. C.A. § 174 (1958).

like the state courts of California where certain discretion lies with the trial court judge to strike "priors," or find them proved or not proved, this discretion does not exist under the law the Congress has seen fit to enact for the guidance of federal court judges. We can debate the merits of the matter, but we cannot legislate. No cases are cited by appellant on this point, and we find no merit in it.

The judgment of conviction is affirmed.