**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randall Wilford PRICEPAUL,
Defendant-Appellant.**

**No. 74–3164.**

United States Court of Appeals,
Ninth Circuit.

March 29, 1976.

As Amended on Denial of Rehearing
Aug. 9, 1976.

Barrett S. Litt (argued), Los Angeles, Cal., for defendant-appellant.

Leonard Sharenow, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

OPINION

Before CHAMBERS, TRASK and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Pricepaul appeals his jury convictions of three counts of making false statements in

connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) and two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a).[1] Pricepaul claims that his prior state felony conviction is unconstitutional under both federal and state standards and therefore cannot be used to prove his guilt on any of the five counts. We reverse and remand to the district court for a hearing on the validity of the prior state conviction under federal constitutional standards.

On October 30, 1969, Pricepaul pleaded guilty under the name Randy Price in a California state court to a charge of taking an automobile with intent to deprive the owner of possession, a felony, in violation of section 10851 of the California Vehicle Code. The only record of what happened at the time his plea was taken is a minute order describing the proceedings leading to Pricepaul's conviction. The record notes that Pricepaul was represented by counsel, that he was found sane at the time the offense was committed, that he pleaded guilty to one count and two others were dismissed, that he waived statutory time for judgment and sentencing and the right to apply for probation, and that he was adjudged guilty and given three years probation.[2] The record does not reflect that Pricepaul was advised of or that he voluntarily waived his rights to a jury trial, to confrontation of the witnesses against him, or his privilege against compulsory self-incrimination.

The evidence introduced in the district court showed that on two occasions, in 1971 and 1972, Pricepaul purchased firearms which had been shipped in interstate commerce. On those occasions and on a third in 1972, when he attempted to purchase a fire-

---

1. These statutes provide in relevant part:
   (a) It shall be unlawful—

   . . . .

   (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.
   18 U.S.C. § 922(a)(6) (Supp.1975).
   (a) Any person who—
      (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

      . . . .

   and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
   18 U.S.C. App. § 1202(a) (1969).

2. The minute order reads:
   C–21327 PEOPLE VS PRICE, RANDY WILFORD
   Hearing re: Proceedings under Section 1026 P.C.

   Defendant in court with counsel Robert Trench. People represented by A. Wells, Deputy District Attorney. The Deputy District Attorney, the defendant personally, and his attorney waive appearance in court of Medical Examiner, waive further commitment proceedings and stipulate that the matter be heard on doctors written reports. The Court finds that said defendant was mentally sane within Section 1026 P.C. at the time of the commission of the offense. Motion by the defendant to withdraw not guilty plea to Count 2. Motion granted. Defendant withdrew not guilty plea as to Count 2 of information. To the Information defendant now pleads Guilty as to Count 2. Defendant waived statutory time for pronouncement of judgment and sentencing. Defendant waived right to make application for probation. Defendant requested immediate sentencing. No legal cause appearing why judgment should not now be pronounced, and the defendant having pled guilty to the crime of a Felony, to wit: Violation of Section 10851 V.C. Probation granted for 3 years under certain conditions and that defendant Violate no laws, comply with the normal rules and regulations of the Probation Department. Bail exonerated. Motion by the People to dismiss Counts 1 and 3. Motion granted. Court ordered Counts 1 and 3 dismissed. Court ordered trial date of November 12, 1969 vacated. Probation Department relieved of supervision.
   [C.T. 39.]

arm, Pricepaul signed an Internal Revenue Service Form 4473 stating that he had never been convicted of a felony.

Pricepaul's sole contention before us is that his prior state felony conviction is absolutely void in that it was the result of a guilty plea not taken in accordance with *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *In re Tahl,* 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (1969). Pricepaul claims that he therefore is not a "convicted" felon within the meaning of the statutes and should not have been found guilty on any of the counts charged.

## I

In *Boykin v. Alabama, supra,* the Supreme Court held that it was constitutional error for a state trial court to accept a guilty plea without an affirmative showing that the plea was voluntary and intelligent. A guilty plea was said to waive three federal constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against compulsory self-incrimination. Waiver of these three rights by a guilty plea cannot be presumed from a silent record.

In *In re Tahl, supra,* the California Supreme Court interpreted *Boykin* for the California trial courts. That court held the record must contain on its face direct evidence that the accused was specifically and expressly made aware of each of these three federal rights and that he voluntarily waived them.

The first question is whether a finding that Pricepaul's prior state conviction was the result of a guilty plea not taken in accordance with *Boykin* or *Tahl* would entitle him to reversal of this federal firearms conviction. This precise question appears never to have been decided by a federal court. There are two decisions in our circuit, however, involving facts close enough to those before us to give us guidance.

*United States v. Liles,* 432 F.2d 18 (9th Cir. 1970), involved a conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a). Liles' claim was that his prior conviction had been subsequently reversed by the Fifth Circuit on grounds of insufficient evidence, *United States v. Duke,* 423 F.2d 387 (5th Cir. 1970), and that Congress meant to punish only those whose convictions were upheld on appeal. We rejected this contention, however. We found that "Congress' deep concern about the easy availability of firearms" led it to prohibit possession by "those who Congress had reason to believe pose a greater threat to community peace than does the public generally." Thus we concluded that Congress did not intend to exempt from the statute "one whose status as a convicted felon changed after the date of possession, *regardless of how that change of status occurred.*" 432 F.2d at 20 (emphasis added).

This broad construction of the statutes is supported by the legislative history and by the decisions of other courts which have construed them. In addition to possession of firearms by convicted felons, 18 U.S.C. App. § 1202(a) prohibits possession by veterans with dishonorable discharges, mental incompetents, persons who have renounced citizenship in the United States, and illegal aliens. This statute was enacted as part of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197. It was never studied by a congressional committee; its legislative history consists solely of discussions on the floor of Congress. In explaining the proposed statute to the House, Representative Pollock stated its purpose:

> The overall thrust is to prohibit possession of firearms by criminals or other persons who have specific records or characteristics which raise serious doubt as to their probable use of firearms in a lawful manner.

114 Cong.Rec. 16298 (1968). The legislative history of Title IV, of which 18 U.S.C. § 922(a)(6) is a part, demonstrates a similar purpose. *See Barrett v. United States,* 423 U.S. 212, 219–21, 96 S.Ct. 498, 502–03, 46 L.Ed.2d 450, 456–57 (1976).

In *Liles* we concluded that this purpose could be effectuated only if the statute were read as applying to every convicted felon, even if it were later determined that there was not sufficient evidence to support the conviction. We supported this conclusion with reliance on an Eighth Circuit case interpreting the Federal Firearms Act of 1938, ch. 850, 52 Stat. 1250. That Act prohibited interstate transportation of firearms by one under indictment for a felony. The Eighth Circuit held that the congressional intent was to punish one under indictment at the time of the violation even though the indictment was subsequently quashed. *DePugh v. United States,* 393 F.2d 367 (8th Cir.), *cert. denied,* 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968). Since our decision in *Liles,* the only other court to consider the issue has adopted an identical construction of the statute on similar facts. *United States v. Williams,* 484 F.2d 428 (8th Cir. 1973).

Thus, the government argues that since Pricepaul's prior state conviction had not been reversed at the time he possessed the firearms and made the allegedly false statements involved here, under *Liles* any alleged constitutional infirmity of that conviction is irrelevant. However, this claim is called into serious question by our decision in *McHenry v. California,* 447 F.2d 470 (9th Cir. 1971), decided one year after *Liles.* There, a state prisoner brought a *habeas corpus* proceeding charging that he was being held pursuant to a conviction for possession of a concealed weapon by a convicted felon in violation of section 12021 of the California Penal Code, *as amended,* Cal.Pen. Code § 12021 (West Supp.1975). The district court had determined, after an evidentiary hearing, that the petitioner's prior state statutory rape conviction was invalid because certain unspecified federal constitutional rights of the petitioner had been infringed. We held in a "per curiam" opinion, with one judge dissenting, that the state could not, consistent with the federal Constitution, base McHenry's state firearms conviction on this invalid prior rape conviction. *Liles* was distinguished on the ground that there, "the prior conviction was held invalid, not on any federal constitutional ground but because the evidence was insufficient." 447 F.2d at 471.

We have some doubt that *McHenry* can be read broadly for the proposition that the invalidity of a prior conviction under *any* provision of the federal Constitution prevents use of the conviction to prove guilt under a firearms statute. Since the federal constitutional rights infringed in that case were unspecified, however, it is difficult to ascertain how far the holding should extend.

We need not reach that question here, however, since the result in our case is dictated by *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1969). There the Court said that a conviction in violation of *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), and *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could not be used to "support guilt or enhance punishment for another offense . . . ." 389 U.S. at 115, 88 S.Ct. at 262. Thus the Court held that where the record of a prior proceeding is silent as to whether the defendant validly waived counsel, the resulting conviction may not be introduced in evidence in a subsequent trial to enhance punishment under a recidivist statute. We cited *Burgett* in *McHenry,* 447 F.2d at 471.

■ *Boykin* borrowed the rule that the validity of a guilty plea may not be presumed from a silent record from *Carnley v. Cochran, supra,* which held that waiver of the right to counsel may not be presumed from a silent record. Since some of the substantive rights protected by the *Boykin* rule are of similar importance to the integrity of the judicial guilt-determination process as the right to counsel, since *Boykin* treated waivers of the right to counsel and waivers of rights by guilty pleas as similar problems, and since *Burgett* held that a conviction obtained in violation of *Carnley* and the right to counsel may not be used "to support guilt . . . for another offense," we hold that a prior state conviction obtained in violation of *Boykin* and the

rights it protects may not be used to establish a federal firearms violation.[3]

## II

The next question we must consider is whether Pricepaul established a *Boykin* violation in the district court. Pricepaul raised the issue of the validity of the plea in a pretrial motion to suppress the record of the prior state conviction. The only papers Pricepaul filed in support of his motion were a copy of the minute order pertaining to the prior conviction and a memorandum of law arguing that introduction of the silent record alone shifted the burden to the government to prove that the plea was valid under *Boykin.*

Although *Boykin* itself is ambiguous, it has been read as requiring that the record affirmatively disclose that the guilty plea was voluntary and intelligent. *See Brady v. United States,* 397 U.S. 742, 747 n.4, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970) ("The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily."); *United States v. Sherman,* 474 F.2d 303, 305 (9th Cir. 1973) ("inquiry must be fully developed on the record"); *In re Tahl, supra,* 1 Cal.3d at 132, 81 Cal.Rptr. at 584, 460 P.2d at 456 ("the record must contain *on its face* direct evidence" that the defendant voluntarily and intelligently waived each of the three rights involved).

Subsequent federal court decisions have made clear, however, that a plea-taking record silent about *Boykin* rights does not require automatic reversal; the prior conviction may stand if it is proved at a postconviction evidentiary hearing that the plea was voluntary and intelligent. *Wilkins v. Erickson,* 505 F.2d 761, 764–65 (9th Cir. 1974); *Todd v. Lockhart,* 490 F.2d 626, 627 (8th Cir. 1974); *see North Carolina v. Alford,* 400 U.S. 25, 29 n.3, 91 S.Ct. 160, 163, 27 L.Ed.2d 162, 166 (1970) (dictum); *cf. United States v. Thoresen,* 428 F.2d 654, 663–64 (9th Cir. 1970) (right to counsel); *United States v. Martinez,* 413 F.2d 61, 63–64 (7th Cir. 1969) (voluntariness of pre-*Boykin* guilty plea); *Williams v. Coiner,* 392 F.2d 210, 213 (4th Cir. 1968) (right to counsel).

In this case, the district court did not hold an evidentiary hearing on whether the prior state plea was made voluntarily and intelligently but the government argues that this was not error. The government first contends that a prior conviction is entitled to presumptive validity and that Pricepaul must carry a heavy burden if it is to be set aside. This contention is clearly foreclosed by *Boykin* itself: "We cannot presume a waiver of these, three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279 (footnote omitted).

Alternatively, the government claims that Pricepaul's showing was insufficient to shift the burden to the government to

---

**3.** This is not to say that a *Boykin* violation "infects the truth-determining process" enough that *Boykin* should be retroactively applied. *See Stovall v. Denno,* 388 U.S. 293, 298, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Indeed we have held that *Boykin* is not retroactive. *Moss v. Craven,* 427 F.2d 139 (9th Cir. 1970). But we read *Burgett, Carnley* and *Boykin* together to mean that the *Boykin* rule is important enough that a conviction obtained in violation of *Boykin* may not be used to prove a firearms violation.

Not all constitutional requirements may be important enough to be included within the rule of *McHenry,* however. Thus we note, without specifically deciding, that use in a federal firearms prosecution of a prior conviction based on evidence obtained by an illegal search

may not necessarily be forbidden by *McHenry. See United States v. Graves,* 394 F.Supp. 429, 432–33 (W.D.Pa.1975) (*Burgett* limited to violation of right to counsel) *rev'd* (3rd Cir. 1976) (dicta that *Burgett* applies to constitutional rights involving the Fourth, Fifth, Sixth and Fourteenth Amendments); *United States v. Penta,* 475 F.2d 92, 94 (1st Cir.), *cert. denied,* 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88 (1973) (*Burgett* limited to denial of rights that affect integrity of fact-finding process); *United States v. Martinez,* 413 F.2d 61, 63 (7th Cir. 1969) (*Burgett* limited to denial of fundamental constitutional rights); *but see Beto v. Stacks,* 408 F.2d 313, 316–17 (5th Cir. 1969) (*Burgett* applies to any constitutional right applicable to the states by the Fourteenth Amendment).

prove the plea's validity. The trial court denied the motion to suppress the prior conviction on the ground that an evidentiary hearing is not required absent an affidavit making specific allegations that the plea was not voluntary or intelligent. This appears to have been the law before the Supreme Court's decision in *Boykin*. Thus in *Bryant v. Elliott,* 472 F.2d 572, 573 (5th Cir. 1973), the court held that on a state prisoner's federal habeas petition, an evidentiary hearing is not required on the validity of a pre-*Boykin* plea absent specific factual allegations unrefuted by state court records.

This rule has much to recommend it. When the prior conviction is a number of years old and the record of the taking of the plea is silent, it may frequently occur that there will be no evidence available on compliance with the *Boykin* procedures other than the defendant's testimony and the custom of the trial court in taking pleas. In these circumstances, it seems unfortunate to shift the burden to the government to prove compliance with *Boykin* if the defendant is unwilling to submit an affidavit specifically alleging that he did not voluntarily and intelligently waive the rights protected by *Boykin*. Because of this, if we were writing on a clean slate, we would hold that the burden shifts to the government to prove that the guilty plea was voluntarily and intelligently made only after the person convicted (1) demonstrates that the record is silent as to whether *Boykin* procedures were followed (neutral showing) and (2) offers an affidavit or other testimony alleging that in fact the required waiver procedure did not occur (positive showing). However, as we read *Boykin*, we do not believe we are free so to hold.

■ Boykin did not question the validity of his guilty plea in his appeal to the Alabama Supreme Court, although four of the seven justices raised the issue on their own. The United States Supreme Court brushed aside any potential barriers to its reaching the issue of the validity of the plea by stating: "It was error, *plain on the face of the record,* for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama, supra,* 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279 (emphasis added). The Court examined the requirements for waiver of the right to counsel and then held that the same standard should be applied in determining whether a plea was voluntarily made:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

*Id.* (quoting *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77 (1962)). Justice Harlan pinpointed the issue in his dissent: "The Court's reversal is . . . predicated entirely upon the failure of the arraigning state judge to make an 'adequate' record." *Id.* 395 U.S. at 247, 89 S.Ct. at 1714, 23 L.Ed.2d at 282. *Boykin* did no more than show the silent record. The Court held that that alone, if the government presents no evidence, requires reversal. Therefore, we do not think that *Boykin* allows for any rules other than that silence of the record on the *Boykin* waivers is enough by itself to shift the burden to the government to prove that the plea was voluntary and intelligent.

Although there is no definitive federal appellate case to this effect, some decisions on an analogous issue are at least consistent with this conclusion. As *Boykin* incorporated the standard established for determining the validity of a waiver of the right to counsel, right to counsel cases should be persuasive in resolving the issue in the case before us. The rule established in those cases is that a silent record alone shifts the burden to the government to prove the waiver was voluntarily and intelligently made. *Burgett v. Texas,* 389 U.S. 109, 114–15, 88 S.Ct. 258, 261, 19 L.Ed.2d 319, 324 (1967); *United States v. Lufman,* 457 F.2d 165, 166 n.2 (7th Cir. 1972); *United States v. DuShane,* 435 F.2d 187, 190 (2d Cir. 1970).

■ Therefore, we hold that when Pricepaul introduced the minute record of his prior California conviction which did not affirmatively disclose that the rights protected by *Boykin* were voluntarily and intelligently waived and no other record was introduced, he made a showing sufficient to require an evidentiary hearing at which the government would have the burden to prove that the plea-taking was in accordance with *Boykin*. The district court erred in denying Pricepaul's motion and we reverse and remand the case to the district court for such an evidentiary hearing. *See Wilkins v. Erickson, supra,* 505 F.2d at 764–65.

### III

The next question is whether the district court, on remand, should require the government to prove that Pricepaul's plea was taken in accordance with the California reading of *Boykin* announced in *In re Tahl, supra.* While we have held that *Boykin* does not require specific articulation of each of the three rights waived by the guilty plea, as long as it is clear from the record that the plea was voluntary and intelligent, *Wilkins v. Erickson, supra,* the California Supreme Court has adopted a stricter interpretation. In *Tahl,* that court read *Boykin* as requiring that the record show that *each* of the three rights be enumerated for the accused and specifically waived by him.

■ Pricepaul argues, with some degree of persuasiveness, that since the violations of the federal statute with which he is charged can be proven only by evidence of the prior California felony conviction, the

validity of the state conviction must be determined by California law. However, we conclude that the government need not prove compliance with the stricter requirements of *Tahl* in order to use the prior state conviction to prove a violation of the federal firearms statutes. The construction of a federal statute is a matter solely of federal law, and the degree to which a federal statute incorporates or refers to state law is a question of federal statutory construction. *See Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 208, 66 S.Ct. 992, 994, 90 L.Ed. 1172, 1175 (1946); *United States v. Potts,* 528 F.2d 883, 887 (9th Cir. 1975) (en banc) (Sneed, J., concurring in the result).

In the case of the federal statutes involved here, we have already construed "convicted" felon to include "one whose status as a convicted felon changed after the date of possession, regardless of how that change of status occurred." *United States v. Liles, supra,* 432 F.2d at 20. The only limitation we have placed upon this broad construction is one required by the federal Constitution: "convicted" felon does not include one whose prior conviction is later reversed because of certain federal constitutional defects. *McHenry v. California, supra,* 447 F.2d at 471.

The California Supreme Court's reading of the United States Constitution is not binding on us nor is the California state constitution necessarily applicable in a federal criminal trial.[4] Since the California interpretation of *Boykin* announced in *Tahl* is not required by the federal Constitution, on remand the district court should apply

4. Pricepaul has cited a number of cases in which we have applied state law in evaluating the validity of an arrest or temporary detention of a suspect by state officers for a federal crime. *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Lovenguth,* 514 F.2d 96, 98 (9th Cir. 1975); *United States v. Walling,* 486 F.2d 229, 235 (9th Cir. 1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974). In general terms the rule stated in these cases is that the validity of acts of state officers in enforcing federal law is tested under both state and federal law. This rule is not mandated by the federal Constitution, however; it is a rule of federal common

law to be followed in the absence of a statute or policy to the contrary. As the Supreme Court stated in the rule in *Di Re:* "[I]n *absence of an applicable federal statute* the law of the state where an arrest without warrant takes place determines its validity." 332 U.S. at 589, 68 S.Ct. at 226, 92 L.Ed.2d at 217 (emphasis added). Here we have construed the applicable federal statute as applying to a person convicted of a felony in state court regardless of the validity under state law of his conviction so long as the conviction is not invalid under the federal Constitution. *United States v. Liles, supra; McHenry v. California, supra.* Thus the cases cited by Pricepaul are not in point.

425

the federal view of *Boykin.* Thus, the government need prove only that Price-paul's prior state plea was voluntary and intelligent in accordance with our decision in *Wilkins v. Erickson, supra,* and need not show that each of the three *Boykin* rights was expressly brought to Pricepaul's attention and waived by him.

REVERSED AND REMANDED.