UNITED STATES of America, Plaintiff-Appellee,

v.

Albert James GOODHEIM, Defendant-Appellant.

No. 80–1408.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1981.

Decided July 27, 1981.

Thomas E. Kotoske, Palo Alto, Cal., for defendant-appellant.

Henry Rossbacher, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Goodheim appeals his jury conviction of two counts of making false statements in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), two counts of receipt of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(h)(1), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C.App. § 1202(a)(1).[1]  One of the two

1. These statutes provide, in pertinent part:

(a) Any person who—

   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

false statements in each of the latter two counts consisted of Goodheim's representation that he was not a convicted felon. Goodheim claims that his prior state felony conviction is constitutionally infirm and therefore cannot be used as a basis for his conviction on any of the five counts. Goodheim also raises several evidentiary issues and attacks the consecutive sentences he received on two counts. We reverse and remand to the district court for a hearing on the validity of the prior state conviction.

On November 6, 1964, Goodheim pleaded guilty in a Washington state court to the charge of unlawfully withholding $275.20 in insurance premium payments from his employer. The offense charged constituted a felony under state law. The record describing the proceedings at the time his plea was taken indicates only that Goodheim was represented by counsel, that he pleaded guilty to the charge, and that he was adjudged guilty and placed on probation for three years. There is no indication in the record of those proceedings that Goodheim was informed of or that he voluntarily waived his right to a jury trial, his right to confront the witnesses against him, or his privilege against self-incrimination.

18 U.S.C. App. § 1202(a)(1).
  (h) It shall be unlawful for any person—
    (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year

.   .   .   .   .

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(h)(1).
  (a) It shall be unlawful—
    (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

## I.

Shortly before trial, Goodheim moved to strike the Washington state felony conviction, which serves as the predicate conviction for all counts in the current indictment. Relying on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Goodheim claimed that the predicate conviction was constitutionally infirm because he had not been represented by counsel at the Washington proceeding and because he had not been informed of and voluntarily waived his rights.

    The district court denied the motion on the basis of the Supreme Court decision in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In *Lewis,* the Court considered whether a constitutionally infirm state conviction which had not previously been challenged may serve as the predicate conviction under 18 U.S.C. App. § 1202(a)(1). Stating that the statutory language neither imposes nor "suggests any restriction on the scope of the term 'convicted,'" the Court held that section 1202(a)(1) "prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds." *Id.* at 60, 65, 100 S.Ct. at 918, 921.[2]

18 U.S.C. § 922(a)(6).

2. The district court was correct in its implicit assumption that *Lewis* governs prosecutions under §§ 922(a)(6) and 922(h)(1), as well as § 1202(a)(1). In *Lewis,* the Court stated that "with regard to the statutory question at issue here, we detect little significant difference between Title IV and Title VII. Each seeks to keep a firearm away from any person ... who has been convicted of a felony, although the definition of 'felony' differs somewhat in the respective statutes." 445 U.S. at 64, 100 S.Ct. at 920. Section 1202(a)(1) is part of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 236. Sections 922(a)(6) and 922(h)(1) are part of Title IV of the Act. The Court also stated that "[t]he identical issue that is presented in this case has also arisen in the context of challenges to convictions under ... § 922(h)(1)." The Supreme Court granted certiorari in *Lewis* because of the conflict among the circuits concerning the propriety of a collateral attack on the predicate conviction in the course of a federal firearms prosecution. 445 U.S. at 58, n.4, 100 S.Ct. at 917, n.4. In its

On appeal, Goodheim argues that *Lewis* should not be given retroactive effect.[3] We conclude that *Lewis* may not be applied retroactively in this circuit.

Prior to *Lewis*, and prior to the transactions on which the charges against Goodheim are based, we had held that a state conviction obtained in violation of *Boykin* may not be used to support a federal firearms violation. *United States v. O'Neal*, 545 F.2d 85, 86 (9th Cir. 1976); *United States v. Pricepaul*, 540 F.2d 417, 421–22 (9th Cir. 1976).[4] The defendants in *O'Neal* and *Pricepaul* were permitted to attack collaterally their prior convictions in the course of the federal firearms violation proceedings. *O'Neal*, 545 F.2d at 86; *Pricepaul*, 540 F.2d at 422.

■ Consequently, *Lewis* effects a reversal of the law in this circuit. Where we have overruled a prior decision in such a manner as to expand the scope of potential criminal liability, we have applied the new rule prospectively. In *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975) (en banc), this court expressly overruled *United States v. Hoctor*, 487 F.2d 270 (9th Cir. 1973), and held that a prior felony conviction that had been expunged pursuant to a Washington state statute could serve as the predicate for a federal firearms conviction. 528 F.2d at 885. We further determined that the new rule must be given prospective application only, because, "[a]s Potts lacked notice of our subsequently revised view of the statute, 'due process fairness bars the retroactive judgment of his conduct using the expanded definition.' " *Id.* at 886, quoting

*United States v. Jacobs*, 513 F.2d 564, 566 (9th Cir. 1974). We believe the same principle applies when a rule has been in effect in the Ninth Circuit for a period of time and is subsequently overruled by the Supreme Court.

■ The principle which requires prospective application of a judicial decision which expands criminal liability is based on analogy to treatment of *ex post facto* legislation. The *ex post facto* clause applies of its own force only to legislative acts, not to judicial decisions. *Frank v. Mangum*, 237 U.S. 309, 344, 35 S.Ct. 582, 594, 59 L.Ed. 969 (1915). However, the right which the clause protects against legislative action, that of fair warning of conduct which is criminally culpable, is protected against federal judicial action by the due process clause of the fifth amendment. *Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977).

Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, sec. 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action," or "that *aggravates* a *crime*, or makes it *greater* than it was, when committed." *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648. If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving pre-

footnote describing the conflict among the circuits on this issue, the Court cited cases treating collateral attack in prosecutions under § 922(a)(6). *United States v. Pricepaul*, 540 F.2d 417 (9th Cir. 1976), and *United States v. O'Neal*, 545 F.2d 85 (9th Cir. 1976), were among the cases cited. *Id.*

3. The firearms transactions on which the charges against Goodheim are based occurred in 1977.

4. Pricepaul and O'Neal were charged with making false statements in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) and possession of a firearm by a convicted felon, in violation of 18 U.S.C. App. § 1202(a). Goodheim was charged with violation of the same sections, as well as with violation of 18 U.S.C. § 922(h)(1), receipt of a firearm by a convicted felon. For the reasons stated in note 2, *supra*, we view *Pricepaul* and *O'Neal* as governing prosecutions under § 1202(a) as well as §§ 922(a)(6) and 922(h)(1).

cisely the same result by judicial construction. *Cf. Smith v. Cahoon,* 283 U.S. 553, 565, 51 S.Ct. 582, [586] 75 L.Ed. 1264. The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," Hall, General Principles of Criminal Law (2d ed. 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

*Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964) (footnote omitted) (emphasis in original).

*Pricepaul* and *O'Neal* expressed the law in this circuit prior to and at the time of Goodheim's transactions. The law was that a state conviction which violated *Boykin* could not support a federal firearms conviction, since a collateral attack on the constitutionally infirm conviction could be made in the course of the federal firearms prosecution. In light of *Pricepaul* and *O'Neal, Lewis* operates to expand the scope of criminal liability in this circuit.[5] Goodheim, like Potts, had no notice of the subsequently revised judicial view of the federal firearms statutes at the time he purchased the firearms.

■ Had *Pricepaul* been overruled by a decision of this court, we would have applied the new rule prospectively. From the standpoint of an individual who looked to *Pricepaul* for notice of the meaning of the federal firearms statutes, it is immaterial

that *Pricepaul* was overruled by a decision of the Supreme Court rather than by our own decision. It is whether an act of judicial enlargement has occurred, and not which court has issued the decision, that is determinative of the due process issue. Consequently, we hold that retroactive application of *Lewis* in this circuit is barred by the due process clause of the fifth amendment.

■ We are mindful that the result we reach today precludes the uniformity among the circuits which normally ensues following a decision of the Supreme Court.[6] However, when uniformity among the circuits collides with a fundamental precept of criminal jurisprudence, that "the required criminal law must have existed when the conduct in issue occurred," uniformity must yield.

## II.

■ We next consider whether Goodheim established that his conviction was constitutionally infirm in the district court. Goodheim challenged the validity of the guilty plea in a pretrial motion to strike the prior felony conviction from the indictment. In support of his motion, Goodheim filed a declaration stating that in his recollection he had no attorney representing him at the time of the plea, that he was not told that he had a right to a jury trial, a right to confront witnesses, or a privilege against self-incrimination, and that he did not realize that he was pleading guilty to a felony charge. Goodheim also filed a copy of the record, which consisted of the information, the plea, an order deferring sentence and placing defendant on probation, and a mo-

---

**5.** The effect of our decisions in *Pricepaul* and *O'Neal* is obviously more than a procedural one, governing merely the timing of the challenge to a prior conviction. Their import goes to the heart of one of the essential elements of the federal firearms offense, the definition of a "prior conviction." We ruled in those cases that "a conviction obtained in violation of *Boykin* may not be used to prove a firearms violation." *Pricepaul,* 540 F.2d at 422 n.3. *Cf. Unit-*

ed *States v. Potts,* 528 F.2d 883 (9th Cir. 1975) (*en banc*).

**6.** In those circuits which prohibited collateral attack prior to *Lewis,* no notice problem arises if *Lewis* is applied retroactively. Those circuits will, of course, continue to follow the rule which the Supreme Court adopted in *Lewis.*

tion for order revoking the deferred sentence. He also filed a memorandum of law arguing that the absence from the record of any information indicating that his guilty plea was voluntarily or intelligently made shifted the burden to the government to show that the plea was valid.

The government argues that Goodheim's state conviction is not infirm, relying solely on the fact that a certified copy of Goodheim's conviction shows that he was represented by counsel at the time of his plea.[7] That the person convicted is represented by counsel is irrelevant to a *Boykin* violation. The defendants in *Boykin* and *Pricepaul* were represented by counsel in the state court proceedings. *Boykin*, 395 U.S. at 239, 89 S.Ct. at 1710; *Pricepaul*, 540 F.2d at 419. The issue in those cases was sufficiency of the record to show a voluntary and intelligent waiver by guilty plea of the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712; *Pricepaul*, 540 F.2d at 420.

In *Boykin*, the Court held that a state court may not constitutionally accept a guilty plea without an affirmative showing that the plea was voluntary and intelligent. 395 U.S. at 243, 89 S.Ct. at 1712. A silent record does not require automatic reversal; the government may prove that the plea was voluntary and intelligent at an evidentiary hearing. *Wilkins v. Erickson*, 505 F.2d 761, 764–65 (9th Cir. 1974). In *Pricepaul*, we reluctantly held a silent record sufficient both to trigger an evidentiary hearing and to shift the burden to the government to prove that the plea was voluntary and· intelligent. 540 F.2d at 423. We further indicated that, had we not been constrained by *Boykin*, we would have preferred to require, in addition, an affidavit from the defendant specifically alleging that the plea was not voluntary or intelligent. *Id.*

Goodheim has done more than establish that the record was silent with respect to *Boykin* waivers. His declaration, in combination with the silent record, satisfies the more stringent showing we indicated in *Pricepaul* we would· have preferred to require. *Id.*

Since the district court applied *Lewis* retroactively, it found no necessity to conduct an evidentiary hearing. Consequently, the government had no opportunity below to meet its burden of showing a valid waiver of rights by guilty plea. Under these circumstances, we remand to the district court for an evidentiary hearing at which the government will have the burden of proving that the plea was voluntary and intelligent, in accordance with federal standards. *Id.* at 425.[8]

The judgment, with respect to all counts, is reversed and the case remanded to the district court.[9] We find it unnecessary, prior to remand, to consider the evidentiary issues and the sentencing issue which Goodheim raised on appeal. We retain jurisdiction on those issues so that we may decide them, along with any objections Goodheim may have to the conduct of the evidentiary hearing, without requiring a new appeal in the event that the district court concludes

---

7. We assume, for purposes of this appeal, that Goodheim was represented by counsel in the Washington proceeding.

8. In *Pricepaul* we determined that, for purposes of collateral attack, the state conviction must be measured by federal standards, even if appellant bases his attack on both federal and state grounds. 540 F.2d at 425. Goodheim relied on *Boykin* alone.

9. In Counts Two and Four, Goodheim was charged with making two false statements on two separate occasions, on each occasion stat-

ing first that he was not a convicted felon, and second that his name was Alexander Fischer. The district court instructed the jury that the government need prove only one of the two false statements charged. Because the jury might have found that Goodheim had only made a false statement regarding his prior conviction, the Washington state conviction serves as the predicate for the false statement counts. *See Glenn v. United States*, 420 F.2d 1323 (D.C. Cir. 1969).

that the government has carried its burden of proof at the evidentiary hearing.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.